18-1753

_____

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

Lawrence Willson,
Plaintiff/Appellant,

v.

City of Bel-Nor, Missouri,
Defendant/Appellee.

_____

Appeal from the United States District Court
Eastern District of Missouri
The Honorable Ronnie L. White, District Judge

_____

# APPELLANT'S BRIEF

_____

Anthony E. Rothert
Jessie Steffan
Omri E. Praiss
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114

Gillian R. Wilcox
ACLU of Missouri Foundation
406 West 34th Street
Suite 420
Kansas City, Missouri 64111
(816) 470-9933

**Attorneys for Appellant**

## SUMMARY OF THE CASE

For a couple of years, Lawrence Willson has had three political yard signs in front of his house. In December 2017, Willson was charged with violating the City of Bel-Nor's one-yard–sign limit, which is codified as § 400.120(E) of the Bel-Nor Code of Ordinance.

Willson filed a Complaint alleging that the Ordinance—"which totally prohibits any window or wall sign, as well as limiting each residential parcel to a single yard sign—is content based, vague, and overbroad, and it violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment, both on its face and as applied to Willson." App. 6.

The district court denied Willson's motion for preliminary injunction. In so doing, the district court concluded that the Ordinance is a valid content-neutral regulation. App. 122–124. At the same time, the district court concluded that Willson could not: (1) challenge the Ordinance under the overbreadth doctrine; or (2) challenge the Ordinance as an invalid content-based regulation. App. 120–122 and 124–125. This appeal is from the denial of a preliminary injunction.

Willson requests fifteen minutes for oral argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE .................................................................................. i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iv

JURISDICTIONAL STATEMENT .....................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE.............................................................................4

   I.   Statement of Facts.......................................................................................4

   II.  The District Court Proceedings ..................................................................7

STANDARD OF REVIEW ...............................................................................12

SUMMARY OF THE ARGUMENT .................................................................13

ARGUMENT ....................................................................................................16

   I)   The district court abused its discretion in denying the motion for
       preliminary injunction because Willson is likely to succeed on his First
       Amendment claim. .....................................................................................16

      A)    The Ordinance likely violates the First Amendment because it is
          facially overbroad. .............................................................................17

B)      The Ordinance likely violates the First Amendment because it is content-based and cannot withstand strict scrutiny. ...................................... 19

II)  The district court erred in concluding that Willson could not challenge the Ordinance as facially invalid under the overbreadth doctrine. ........................ 30

III) The district court erred in concluding that Willson could not challenge the Ordinance as an invalid content-based regulation, in that the Ordinance's exemption for certain types of flags makes the definition of "sign" content based. ................................................................................................. 33

CONCLUSION .................................................................................... 38

CERTIFICATE OF COMPLIANCE ....................................................... 39

CERTIFICATE OF SERVICE ................................................................. 2

# TABLE OF AUTHORITIES

## Cases

*Advantage Media, LLC v. City of Hopkins*, 379 F. Supp. 2d 1030 (D. Minn. 2005) .................................................................................. 22, 35

*Arlington Cty. Repub. Comm. v. Arlington Cty.*, 983 F.2d 587 (4th Cir. 1993) .................................................................................. 14, 27

*Cent. Radio Co. Inc. v. City of Norfolk*, 811 F.3d 625 (4th Cir. 2016) ......... 22

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) .............................. 14, 23, 28, 29

*Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382 (6th Cir. 1996) ..................................................................................... 28

*Covenant Media of Ill., L.L.C. v. City of Des Plaines*, 391 F. Supp. 2d 682 (N.D. Ill. 2005) ..................................................................... 22

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc) ..................................................................................... 16

*Doe v. Young*, 664 F.3d 727 (8th Cir. 2011) ................................................ 33

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) .......................... 33

*Gilleo v. City of Ladue*, 774 F. Supp. 1559 (E.D. Mo. 1991) ..................... 29

*Grand River Enters. Six Nations, Ltd. v. Beebe*, 467 F.3d 698 (8th Cir. 2006) ..................................................................................... 12

*Johnson v. Minn. Park & Recreation Bd.*, 729 F.3d 1094 (8th Cir. 2013) . 12, 16

*Kennedy v. Avondale Estates*, 414 F. Supp. 2d 1184 (N.D. Ga. 2005).........23

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014)........................................ 25, 29

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ........................................................................... 30, 31

*Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir. 2012) (en banc)................................................................. 12, 16

*Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.3d 728 (8th Cir. 2011) ........................................................................................ passim

*Neighborhood Enters., Inc. v. City of St. Louis*, 718 F. Supp. 2d 1025 (E.D. Mo. 2010) ...................................................................................35

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) .........................................20

*Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, 821 F.3d 992 (8th Cir. 2016) ...............................................................................12

*Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014) .. 13, 17, 19

Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250 (11th Cir. 2005)  22, 24

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ...................................................26

*Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765 (8th Cir. 2014).........1

*Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785

   (8th Cir. 2015) .................................................................................. 14, 22

*Texas v. Johnson*, 491 U.S. 397 (1989) ......................................................25

*United States v. Heathershaw*, 81 F.3d 765 (8th Cir. 1996) ........................33

*United States v. Stevens*, 559 U.S. 460 (2010) .......................... 13, 17, 19, 26

*Wash. State Grange v. Wash. State Repub. Party*, 522 U.S. 442 (2008) 17, 26

*Ways v. City of Lincoln*, 274 F.3d 514 (8th Cir. 2001) .............. 14, 19, 30, 31

*Whitton v. City of Gladstone*, 54 F.3d 1400 (8th Cir. 1995) ........................24

## Statutes

   28 U.S.C. § 1292(a)(1) .................................................................................1

   28 U.S.C. § 1331...........................................................................................1

   42 U.S.C. § 1983..........................................................................................1

## Constitutional Provisions

   U.S. Const., Am. 1 .....................................................................................20

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. § 1331, the district court has subject-matter jurisdiction because Willson's complaint states federal causes of action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. In addition, this Court has jurisdiction over this interlocutory appeal because the appeal of the district court's denial of a motion for preliminary injunction is permitted under 28 U.S.C. § 1292(a)(1). *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765, 768 (8th Cir. 2014).

# STATEMENT OF THE ISSUES

I.   Whether the district court abused its discretion in denying Willson's motion for preliminary injunction in that Willson is likely to succeed on his First Amendment claim?

   U.S. Const. amend. 1

   *United States v. Stevens*, 559 U.S. 460 (2010)

   *Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014)

   *Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728 (8th Cir. 2011)

II.  Even assuming the Ordinance is content-neutral, whether the district court erred in concluding that the Ordinance is a valid regulation in that the Ordinance is not narrowly tailored and does not leave open ample alternative means of communication?

   *City of Ladue v. Gilleo*, 512 U.S. 43 (1994)

   *Arlington Cty. Repub. Comm. v. Arlington Cty.*, 983 F.2d 587 (4th Cir. 1993)

III.    Whether the district court erred in concluding that Willson could not challenge the Ordinance as facially invalid in that the Ordinance's broad scope significantly threatens the free-speech rights of other residents of Bel-Nor in different ways?

> *Ways v. City of Lincoln*, 274 F.3d 514 (8th Cir. 2001)
>
> *Doe v. Young*, 664 F.3d 727 (8th Cir. 2011)
>
> *United States v. Heathershaw*, 81 F.3d 765 (8th Cir. 1996)
>
> *United States v. Stevens*, 559 U.S. 460 (2010)

IV.    Whether the district court erred in concluding that Willson could not challenge the Ordinance as an invalid content-based regulation in that the Ordinance's exemption for certain types of flags makes the definition of "sign" content-based?

> *Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728 (8th Cir. 2011)

**STATEMENT OF THE CASE**

## I.     Statement of Facts

Willson resides in the City of Bel-Nor. App. 33. For a couple of years,

Willson has been displaying three freestanding yard signs in his front yard. *Id*. The

three signs read: "Black Lives Matter," "Clinton Kaine," and "Jason Kander U.S.

Senate." *Id*. Willson believes these signs have a still-relevant political message and

wishes to continue displaying all three. *Id*. at 33–34.

Willson also has a sign taped to the inside of his glass front door. Tr. 6. The

sign informs the Fire Department that the Willsons have pets and asks them to

rescue the pets in case of fire. Tr. 6 (Exhibit F). Finally, Willson also displays a

garden flag beside the door to the garage. Tr. 7 (Exhibit F).

In June 2017, a Bel-Nor police officer left Willson a written warning that his

three political yard signs violated § 400.270 of the Bel-Nor Code, which at the

time prohibited "political advertising" signs displayed more than 15 days after an

election. App. 34 and 48; Tr. 8–9. In response, Willson's counsel alerted Bel-Nor

of the 2015 decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), which

prohibits durational sign restrictions based on content. Tr. 9.

In response, in September 2017, Bel-Nor enacted the Ordinance now at issue. App. 89. In addition to repealing § 400.270, the Ordinance provides, in relevant part:

E.    *Sign Regulations*

  1. *Definitions*. For purposes of this Section, the following terms shall mean:

     *Sign*: Any poster, object, devise, or display, situated outdoors, which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event, idea, belief or location by any means, including but not limited to words, letters, figures, designs, symbols, colors, logos, fixtures, cartoons or images.

     ….

  2. *Permitted Signs on Private Property*. Each improved parcel is allowed to post one stake-mounted self-supporting freestanding sign with no more than two sign faces which are directly back-to-back of one another in the exterior portions of the property as long as the sign meets the following requirements:

     (f) No sign shall be affixed to any building, fence, tree, gas light, lamp post, garage, basketball hoop or any structure or improvement.

     (g) No sign shall be displayed from the interior of any window.

  3. *Prohibitions*. The following materials, appurtenances and types of signs are prohibited:

     (a) The use of balloon, streamers, banners or similar objects as part of or attached to a sign.

….

(e) Moving signs, including any material that flutters, undulates, swings, rotates or otherwise moves.

(f) Obscenity.

…

5. *Flags*. The term "flag" shall include any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution. For purposes of this Section, flags shall not be considered "signs".

Not more than one (1) flag is hereby permitted on each improved parcel within the zoning district… Within five (5) days prior to and three (3) days following a national holiday such as Independence Day, Memorial Day, Labor Day or Veterans Day, there shall be no limitation on the number of flags displayed on any parcel of land within the City.

App. 95-97 (italics in original).

In December 2017, Willson received an information and summons charging him with violating the Ordinance. App. 34 and 100; Tr. 10–11. The information advised Willson that his violation was punishable upon conviction under Section 100.080 of the Municipal Code as follows: "fines not exceeding $1,000.00, or imprisonment not exceeding 90 days, or both such fine and imprisonment." App. 100; Tr. 11.[1] The summons listed a court date of January 3, 2018 and stated, in

---

[1]    Section 100.080(A)(1) provides for "a fine not exceeding one thousand dollars ($1,000.00) or by imprisonment not to exceed ninety (90) days, or by both such fine and imprisonment, but in any case wherein the penalty for an offense is

relevant part: "If you fail to appear, a WARRANT may be issued for your arrest." App. 35 and 101. No one from Bel-Nor has ever advised Willson that Section 100.080 of the Municipal Code is unenforceable or that he would not be subject to imprisonment for violating the law. Tr. 21.

## II.    The District Court Proceedings

On January 2, 2018, Willson filed his Complaint. App. 6. In Count I of the Complaint, Willson claims that the Ordinance is unconstitutional under the Free Speech Clause of the First Amendment. App. 11. In support, Willson specifically alleges that the Ordinance is unconstitutional for three separate reasons:

- First, "[t]he Ordinance violates the Free Speech Clause of the First Amendment to the Constitution, on its face and as applied, because it impermissibly curtails Willson's free-speech rights."

- Second, "[t]he Ordinance is a content-based regulation because it permits certain types of expression based on its content thereof, including addresses and flags, that would otherwise be prohibited, as well as prohibiting expression based on the content thereof, including obscenity, that would otherwise be permitted."

_____

fixed by any Statute, the same penalty shall apply." App. 102. Furthermore, Section 100.080(A)(2) provides that "each and every day a violation of this Code or any ordinance … shall constitute a separate offense." *Id*.

- <u>Third</u>, "[t]he Ordinance is also overbroad because it totally prohibits window and wall signs and confines each residential parcel, no matter the number of occupants or any other factor, to a single sign."

App. at 11 (Compl. at ¶¶ 39–41).

In Count II of the Complaint, Willson claims that the Ordinance is unconstitutionally vague on its face and thereby violates Willson's right to due process under the Fourteenth Amendment to the U.S. Constitution. App. 12.

Contemporaneous with the filing of his Complaint, on January 3, 2018, Willson filed a motion for preliminary injunction.

On March 23, 2018, the Court held a hearing on Willson's motion for preliminary injunction. Only two witnesses testified at the hearing: Willson and William Hook, who currently serves as the Mayor Pro Tem for the city of Bel-Nor. Tr. 24.

The Court permitted Willson to testify about the Ordinance's application to other residents of Bel-Nor. For example, Willson testified about pictures that he took of several homes in Bel-Nor with various signs on their properties, including one home with two signs in the front yard: one announcing support for unions and the second announcing the home is monitored by a security system. Tr. 12 (Exhibit G). Willson's testimony establishes that this neighbor currently violates the Ordinance by displaying two separate yard signs on his property.

Counsel for Bel-Nor also cross-examined Willson about some of his pictures. Tr. 17. His testimony revealed that another neighbor's house has a "Mayor Hook" yard sign and a flag with the letter "B" on it. Tr. 17–19. Because the letter "B" is not a symbol of "a government or institution" (App. 97), Willson's testimony establishes that this neighbor also currently violates the Ordinance by having two "signs" on his property. Tr. 22–23.

Hook testified that Bel-Nor adopted the Ordinance primarily to address public safety: "we felt that in the interest of public safety, that was a consideration for avoiding distracted driving throughout the neighborhoods where we have a good amount of traffic. So I think that was the primary reason." Tr. 34. Hook testified that this safety concern was increased during "certain times of the year" when Bel-Nor uses its streets for certain events. Tr. 35–36.

On cross-examination, Hook admitted that Bel-Nor did not rely on any traffic studies when it enacted the Ordinance. Tr. 48. Furthermore, Bel-Nor did not consider any alternatives to addressing its public safety concerns, including allowing each home to display two signs. Tr. 49–50.

The district court precluded Willson's counsel from cross-examining Hook about various topics relating to the Ordinance. For example, the district court sustained objections based on relevance with respect to the following questions:

- "Why does Bel-Nor allow unlimited flags around national holidays?"

- "Do flags pose a danger to the health, safety or welfare of people who live in Bel-Nor?"

Tr. 46.

Furthermore, the district court precluded Willson's counsel from inquiring about potential scenarios where a resident could potentially violate the Ordinance. The following excerpt highlights this point:

> Q. In your view, if a -- if a person in Bel-Nor puts up a "No Solicitation" sign on his or her door, are they violating this ordinance?
>
> MR. BRINKER: Your honor, could I just object to the relevance? That's not the facts that were presented here.
>
> THE COURT: Sustained.
>
> MS. STEFFAN: **Your Honor, we brought a facial overbreadth challenge to this ordinance. So that includes all kinds of enforcement**.
>
> THE COURT: **Well, let's talk about the sign at issue as to whether or not it violates that, not everything else**.

Tr. 52 (emphasis added).

On March 29, 2018, the district court entered its order denying Willson's motion for a preliminary injunction. App. 114. In its Conclusions of Law, the district court reached the following conclusions:

- <u>First</u>, the district court concluded that the Ordinance is a valid content-neutral regulation. App. 122-124.

- <u>Second</u>, the district concluded that Willson could not challenge the Ordinance under the overbreadth doctrine because Willson failed to establish "a

realistic danger" that the Ordinance will "significantly compromise First Amendment protections" of third parties. App. 125.

- **Third**, the district court concluded that Willson could not challenge the Ordinance's definition of flag as a facially invalid content-based restriction because there "is no evidence that any exemption for flags affected [Willson] in any adverse way." App. 121.

Willson filed a timely appeal. App. 127.

## STANDARD OF REVIEW

Although the Court reviews the denial of a preliminary injunction for abuse of discretion, "[a]n abuse of discretion occurs where the district court rests its conclusion on clearly erroneous factual finding or erroneous legal conclusions." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). *See also Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 995 (8th Cir. 2016) ("A district court abuses its discretion if, as relevant here, it commits an error of law."). The district court's legal conclusions are reviewed de novo. *Grand River Enters. Six Nations, Ltd. v. Beebe*, 467 F.3d 698, 701 (8th Cir. 2006). *See also Johnson v. Minn. Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (reversing denial of motion for preliminary injunction and stating: "[w]e review [plaintiff's] constitutional claims *de novo*, and we are obliged to make a fresh examination of crucial facts." (citation omitted)).

## SUMMARY OF THE ARGUMENT

The district court erred in denying Willson's motion for preliminary injunction because he is likely to prevail on his First Amendment claim for several reasons.

First, the Ordinance violates the First Amendment because it is likely facially overbroad. The Ordinance restricts each parcel to one stake-mounted self-supporting free-standing sign with no more than two sign faces. App. 96. At the same time, the Ordinance defines the term "sign" extremely broadly: to literally encompass *any* object that could be used to express an idea or belief. App. 95–96. Furthermore, the Ordinance prohibits any sign: (1) that is affixed to any outside structures or tree; or (2) that is displayed from the interior of any window. App. 96–97. Whatever interest Bel-Nor has in regulating signs is not important enough to justify such a broad invasion of the right to speak freely at one's home. *See*, *e.g.*, *United States v. Stevens*, 559 U.S. 460, 473 (2010); *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1158 (8th Cir. 2014).

Second, the Ordinance is likely an invalid content-based regulation because enforcement authorities would have to determine whether a "sign"—as that term is defined—fits within the narrow exemption set forth in the definition of "flag" by representing "a symbol of a government or institution" and/or whether a sign is prohibited because it reflects "obscenity." App. 97. *See*, *e.g.*, *Survivors Network of*

*Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785, 790–91 (8th Cir. 2015) ("*Survivors Network*"); *Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.3d 728, 736 (8th Cir. 2011). The Ordinance fails strict scrutiny because it is not narrowly tailored to accomplish Bel-Nor's asserted interests in traffic safety and aesthetics, nor has the Eighth Circuit recognized those interests as compelling.

Third, even assuming the Ordinance is content neutral, the Ordinance still likely violates the First Amendment because a one-yard-sign limitation is not narrowly tailored and does not leave open ample alternatives methods of communication. *City of Ladue v. Gilleo*, 512 U.S. 43, 54–59 (1994). Indeed, the Fourth Circuit held that a two-sign limitation does not survive intermediate scrutiny. *Arlington Cty. Repub. Comm. v. Arlington Cty.*, 983 F.2d 587, 594–95 (4th Cir. 1993).

The district court did not issue a preliminary injunction in part because it did not engage in meaningful analysis of Willson's claims that the Ordinance is overbroad and content-based. The court avoided these issues by erroneously concluding that Willson could not challenge the Ordinance under the overbreadth doctrine or as a facially invalid content-based restriction. This tact is contrary to two Eighth Circuit decisions that are on point:

- Consistent with this Court's decision in *Ways v. City of Lincoln*, 274 F.3d 514, 518 (8th Cir. 2001), Willson can challenge the facial constitutionality of

the Ordinance because its broad scope significantly threatens the free speech rights of other residents of Bel-Nor in different ways; and

- Consistent with this Court's decision in *Neighborhood Enterprises*, 644 F.3d at 735, Willson can challenge the Ordinance's definition of "sign" as a facially invalid content-based restriction, since the Ordinance's definition of "flag" affects the constitutionality of the definition of "sign" that was applied against Wilson.

## ARGUMENT

### I)   The district court abused its discretion in denying the motion for preliminary injunction because Willson is likely to succeed on his First Amendment claim.

Willson sought to enjoin Bel-Nor's law prohibiting residents from having more than one sign on their property, with certain content-based exceptions, while his First and Fourteenth Amendment challenges are determined on the merits.

To resolve a motion for preliminary injunction, the district court had to consider: (1) the probability that Willson will prevail on the merits, (2) whether Willson faces a threat of irreparable harm absent the injunction, (3) the balance between the harm Willson faces and the injury that the injunction's issuance would inflict upon Bel-Nor, and (4) the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The court's task is somewhat simplified in cases where First Amendment rights are at stake. "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Swanson*, 692 F.3d at 870 (internal quotation marks omitted). In other words, when a plaintiff is "likely to win on the merits of [his] First Amendment claim, a preliminary injunction is proper." *Id.* at 877. *See also Johnson*, 729 F.3d at 1101–02 (reversing denial of preliminary injunction where plaintiff established a likelihood of success on his First Amendment claim).

Willson established that he is likely to succeed on his First Amendment claim because the restriction limiting his family to a single political sign is facially overbroad, a content-based restriction on speech, and not narrowly tailored.

A)  **The Ordinance likely violates the First Amendment because it is facially overbroad.**

In the First Amendment context, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *Stevens*, 559 U.S. at 473 (quoting *Wash. State Grange v. Wash. State Repub. Party*, 522 U.S. 442, 449 n.6 (2008)). While Bel-Nor has a legitimate interest in regulating signs, the incredibly broad scope of the Ordinance demonstrates that it is facially overbroad.

This Court applies a three-part test in evaluating whether a statute is unconstitutionally overbroad:

> 'The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.'
> …
> After construing the statute, the second step is to examine whether the statute criminalizes a 'substantial amount' of expressive conduct.
> …
> Finally, we must ask whether the statute is 'readily susceptible' to a limiting construction which would render it constitutional.

*Snider*, 752 F.3d at 1158 (citations omitted).

On its face, the Ordinance prohibits a substantial amount of protected speech by restricting expression visible outside a person's home in virtually ***all*** recorded forms. In fact, the Ordinance covers all sorts of everyday expressive conduct, like:

- sticking a Post-It on the front door for the mail carrier ("[s]igns shall be mounted to the ground by stakes")

- displaying Christmas lights (as an "object . . . . used to attract attention to an . . . event . . . by any means, including . . . colors," they are a "sign" and "[i]llumination in any manner is prohibited")

- tying a "Happy Birthday" balloon to the mailbox on the day a resident is hosting a birthday party ("[t]he following materials . . . are prohibited . . . [t]he use of balloons")

- sticking an ADT Security window cling to the front window ("[n]o sign shall be displayed from the interior of any window")

- displaying a "Let It Snow" flag in a flag mount ("No sign shall be affixed to any building")

- tacking up a "Welcome Home" banner on the garage ("No sign shall be affixed to any . . . garage . . . ; [t]he following . . . types of signs are prohibited . . . any material that flutters")

- supporting two separate political candidates at the same time ("Each improved parcel is allowed to post one . . . sign")

Whatever interest Bel-Nor has in regulating signs is not important enough to justify such a broad invasion of the right to speak freely at one's home. *See, e.g.*, *Stevens*, 559 U.S. at 474 (holding that statute prohibiting the depiction of animal cruelty was unconstitutionally overbroad because it created "a criminal prohibition of alarming breadth"); *Snider*, 752 F.3d at 1158 (striking down flag desecration statute as facially overbroad because it "criminalizes a substantial amount of expressive activity").

Furthermore, the Ordinance is not readily susceptible to a limiting construction because this Court would have to rewrite the Ordinance for it to pass constitutional scrutiny. But that is not the courts' role. *See, e.g.*, *Stevens*, 559 U.S. at 481 ("We 'will not rewrite a . . . law to confirm it to constitutional requirements,' for doing so would constitute a 'serious invasion of the legislative domain' ") (citations omitted); *Snider*, 752 F.3d at 1158 ("No limiting construction would be consistent with any plausible understanding of the legislature's intent"); *Ways*, 274 F.3d at 519 ("Limiting constructions of state and local legislation are more appropriately done by a state court or an enforcement agency.").

Therefore, Willson is likely to succeed on the merits of his First Amendment claim because the Ordinance is facially overbroad.

**B)** **The Ordinance likely violates the First Amendment because it is content-based and cannot withstand strict scrutiny.**

The Free Speech Clause of the First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Am. 1. Under that clause, a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (citation omitted). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*

In *Reed*, the Supreme Court set forth the following test to determine whether a government regulation was content based:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys.

135 S. Ct. at 2227 (citations omitted). Consistent with definition, the Supreme Court held that the town's sign code was "content based on its face" because it defined several terms based on what message the sign conveyed, and then subjected each of these categories to different restrictions. *Id.*

Bel-Nor's Ordinance is content-based because it impermissibly imposes different restrictions depending on the message conveyed by a sign. Specifically, while providing an extremely broad definition of the term "sign," the Ordinance excludes from the definition of "sign" a narrow category of "flags" that "include any fabric or bunting containing distinctive colors, patterns or symbols **used as a symbol of a government or institution**." App. 97 (emphasis added). As a result, if a resident of Bel-Nor wants to display an American flag outside her house, she could—at the same time—place a sign on her yard (because an American flag is not a sign under the Ordinance). On the other hand, if another resident of Bel-Nor wants to display a flag supporting something other than the government, *e.g.*, a political movement such as the Black Lives Matter movement or a sporting team such as the Cardinals, she would not be able to place a sign on her yard (because *those* flags *are* signs under the Ordinance). Indeed, Willson's own garden flag is a "sign," since it draws attention to a holiday rather than representing a government or institution. In addition, the Ordinance prohibits signs that contain "obscenity." App. 97. Yet the Ordinance fails to provide a definition of the term "obscenity."

The Ordinance is also content-based because enforcement authorities have to determine whether a "sign" fits within the narrow exemption set forth in the definition of "flag" by representing "a symbol of a government or institution" or whether an otherwise permissible sign is prohibited because it reflects "obscenity."

*See*, *e.g.*, *Survivors Network*, 779 F.3d at 790–91 (holding that Act which banned the disruption of a house of worship "by using profane discourse, rude or indecent behavior"—but did not define those adjectives—was content based because enforcement authorities would have to decide whether the speaker was using such language in disrupting a house of worship); *Neighborhood Enters.*, 644 F.3d at 736 ("Upon review, we conclude that the zoning code's definition of 'sign' is impermissibly content-based because 'the message conveyed determines whether the speech is subject to the restriction.' ").[2]

Bel-Nor chose to assign different rules to signs based on their content. That is, it classifies flags as "signs" and regulates them as such, but then goes on to exempt *some* flags from its general regulations based on what they symbolize. Those general restrictions (including a ban on material that "flutters") apply to everything else, including flags that symbolize something *other* than a

---

[2]    Other courts agree. *See Cent. Radio Co. Inc. v. City of Norfolk*, 811 F.3d 625, 629 (4th Cir. 2016) (holding that municipal sign code that exempted certain works of art and governmental and religious flags from definition of "sign" was content-based); *Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250, 1264–66 (11th Cir. 2005) (holding that a municipal sign code exemption for governmental and organizational flags was "plainly content based"); *Advantage Media, LLC v. City of Hopkins*, 379 F. Supp. 2d 1030, 1039 (D. Minn. 2005) (holding that defining "sign" to include displays "direct[ing] attention to" only certain things was content-based definition); *Covenant Media of Ill., L.L.C. v. City of Des Plaines*, 391 F. Supp. 2d 682, 691 (N.D. Ill. 2005) (holding exemption for governmental and corporate flags was content-based).

"government or institution." Flags that symbolize a "government or institution" are subject to a different, more generous set of limits: one can be displayed alongside a sign at all times, and unlimited flags can be flown immediately before and after national holidays. If there were significant, articulable safety interests that applied to the rest of the sign ordinance, they would apply to governmental and institutional flags as well; that certain flags are excluded suggests that any such interest is either not compelling or not the least restrictive alternative. *Gilleo*, 512 U.S. at 52 ("Exemptions from an otherwise legitimate regulation of a medium of speech may be noteworthy for a reason quite apart from the risks of viewpoint and content discrimination: They may diminish the credibility of the government's rationale for restricting speech in the first place."); *see also Kennedy v. Avondale Estates*, 414 F. Supp. 2d 1184, 1209 (N.D. Ga. 2005) (striking down under First Amendment portion of sign ordinance that required setback from road but made an exception for "seasonal displays").

Because the Ordinance is content-based, it is subject to strict scrutiny and, as a result, Bel-Nor must have a "compelling" interest in enacting the law *and* the law must be the alternative least restrictive of speech. *Neighborhood Enters.*, 644 F.3d at 738. Bel-Nor cannot carry this heavy burden. *See Gilleo*, 512 U.S. at 59 (O'Connor, J., concurring) ("With rare exceptions, content discrimination in

regulations of the speech of private citizens on private property . . . is presumptively impermissible, and this presumption is a very strong one.").

Bel-Nor has not suggested that its one-sign limitation can survive strict scrutiny. There is a good reason: while Bel-Nor states that its professed interests are to "promote[] the public safety, health and general welfare of the City and its citizenry," App. 95, vague recitations of welfare interests are insufficient to justify a content-based speech restriction. *See Neighborhood Enters.*, 644 F.3d at 738 (quoting *Solantic*, 410 F.3d at 1267 ("The problem is that the ordinance recites those interests only at the highest order of abstraction, without ever explaining how they are served by the sign code's regulations generally, much less by its content-based exemptions from those regulations.")); *Whitton v. City of Gladstone*, 54 F.3d 1400, 1406 (8th Cir. 1995) ("even when a government supplies a content-neutral justification for the regulation, that justification is not given controlling weight without further inquiry"). In addition, whatever interests Bel-Nor might have in traffic safety and aesthetics, those interests are likewise not compelling enough to justify the ordinance. *Neighborhood Enters.*, 644 F.3d at 738 ("a municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling") (quoting *Whitton*, 54 F.3d at 1408).

Here, as in *Neighborhood Enterprises*, the Ordinance "fails both aspects of [strict scrutiny]: the [Ordinance] is not narrowly tailored to accomplish the City's

asserted interests in aesthetics and traffic safety, nor has our case law recognized those interests as compelling." 644 F.3d at 738 (citation omitted).

Therefore, Willson is likely to succeed on the merits of his First Amendment claim because the Ordinance is content based and cannot withstand strict scrutiny.

C) **Even assuming the Ordinance is content neutral, the Ordinance likely violates the First Amendment because it is not narrowly tailored.**

A content-neutral restriction on speech is subject to intermediate scrutiny: the government must have a "significant" interest in restricting the speech, the restriction must be narrowly tailored, and the restriction must leave open ample alternative methods of communication. *See McCullen v. Coakley*, 134 S. Ct. 2518, 2537 (2014) (striking down content-neutral law that "burden[ed] substantially more speech than necessary to achieve the [government's] asserted interests"). Furthermore, the government interest must be "unrelated to the suppression of free expression." *Texas v. Johnson*, 491 U.S. 397, 407 (1989).

Assuming the Ordinance is content-neutral and Bel-Nor articulated a significant interest, it is not narrowly tailored. Only a single sign can be visible outside one's own home. Its definition of "sign" is worded so broadly, in fact, that the Ordinance bans any two of the following examples (among countless other examples): rainbow flags, St. Louis Blues flags, a birthday streamer hung across a front porch, a balloon affixed to an "Open House Today" sign, and a wooden

"please clean up after your dog" sign nailed to a tree. *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."). No rational homeowner would have reason to suspect that sticking a "no soliciting" or "sleeping baby – don't ring bell" Post-It note to their front door could land them in jail, but the Ordinance does in fact criminalize such expression.

It is no answer to say that Bel-Nor will not enforce the Ordinance against residents who display "acceptable" signs on their property; indeed, if that were true, it would underscore both the necessary content-policing and due-process problems inherent in the overbroad law. *See Stevens*, 559 U.S. at 473, 477 (striking down, as facially overbroad, law criminalizing knowing possession of depictions of animal cruelty because "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" and rejecting "the mercy of a prosecutor" as sufficient to save law) (quoting *Wash. State Grange* , 552 U.S. at 449 n.6 (2008)).

Even putting aside the complete ban on window and house signs, the Ordinance fails intermediate scrutiny simply because it restricts each parcel to "one stake-mounted self-supporting freestanding sign with no more than two sign faces." App. 96. Indeed, precisely this type of restriction was held invalid by the

Fourth Circuit in *Arlington County Republican Committee v. Arlington County*, 983 F.2d 587 (4th Cir. 1993).

In *Arlington*, the plaintiff challenged an ordinance which limited the number of temporary signs that an owner could place on his property to two (the "two-sign limit"). *Id*. at 589. At the outset, the Fourth Circuit noted that the two-sign limit infringed on speech:

> by preventing homeowners from expressing support for more than two candidates where there are numerous contested elections. Also, if two voters living within the same household support opposing candidates, the two-sign limit significantly restricts their ability to express support through sign posting.

*Id*. at 594.

The Fourth Circuit then held that the two-sign limit failed intermediate scrutiny because the county "did not narrowly tailor the two sign-limit to further its interests in promoting aesthetics and traffic safety." *Id*. at 595. In support, the court noted that the county could promote its interests through less restrictive means, such as "regulate the design and condition" of signs and/or "prevent posting of signs within a certain distance of the street." *Id*. at 594. Furthermore, the court concluded that the two-sign limit left "no viable alternative means of political speech." *Id*. at 595.

This Court should reach the same conclusion here. Just as in *Arlington*, the Ordinance fails intermediate scrutiny because it is not narrowly tailored to achieve

Bel-Nor's interests in traffic safety and aesthetics. In fact, Bel-Nor did not consider any alternatives to addressing its public safety concerns, including allowing two signs. Tr. 49-50. Furthermore, the Ordinance does not leave open ample alternative methods of communication, especially since, in addition to the yard-sign restriction, the Ordinance precludes homeowners from displaying *any* window signs. *See Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 388 (6th Cir. 1996) (relying on *Arlington* in holding that, "[i]n this case, by banning yard signs altogether, with an exception only for a minimal amount of information necessary for safety and security reasons, the government burdened substantially more speech than necessary, because it completely foreclosed an inexpensive and autonomous way to communicate."). Similarly, the Ordinance's complete bar on window signs burdens substantially more speech than is necessary to allegedly promote Bel-Nor's interests in traffic safety and aesthetics.

The Supreme Court's decision in *Gilleo* is particularly instructive. 512 U.S. at 58. In that case, the Supreme Court considered the constitutionality of Ladue's yard-sign ban, which was being enforced against a homeowner who wished to display a sign with a political message. The Court set aside the content-based exceptions the city had enacted and assumed the ordinance was content neutral. *Id.* at 53. Ladue argued the homeowner had ample alternative methods of communicating her anti-war message because she could picket, leaflet, go door-to-

door, make telephone calls, or display bumper stickers, but the Court rejected those alternatives as inadequate:

> Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the "speaker." As an early and eminent student of rhetoric observed, the identity of the speaker is an important component of many attempts to persuade. . . . Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute. . . . a person who puts up a sign at her residence often intends to reach *neighbors*, an audience that could not be reached nearly as well by other means.

*Gilleo*, 512 U.S. at 56.

In an important way, the Ladue ordinance had mirrored Bel-Nor's. By the time it reached the Supreme Court, Ladue's law encompassed both yard and window signs, but the first version had restricted only yard signs. It nonetheless was preliminarily enjoined. *See Gilleo v. City of Ladue*, 774 F. Supp. 1559, 1564 (E.D. Mo. 1991); *Gilleo*, 512 U.S. at 45–47. Here, Bel-Nor's ordinance permits yard signs (albeit just one) but forbids window signs altogether—including Willson's political signs. *See McCullen*, 134 S. Ct. at 2536 ("When the government makes it more difficult to engage in [comment on matters of public concern], it imposes an especially significant First Amendment burden.").

Thus, even if the Ordinance is treated as content neutral, the Ordinance still violates the First Amendment because it cannot withstand intermediate scrutiny.

**II)** <u>**The district court erred in concluding that Willson could not challenge the Ordinance as facially invalid under the overbreadth doctrine.**</u>

The district court sidestepped the Ordinance's overbreadth by concluding that Willson could not challenge the Ordinance as facially invalid under the overbreadth doctrine. App. 124–125. The district court thought that Willson failed to establish that there is " 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections [of parties not before the Court] for it to be facially challenged on overbreadth grounds.' " App. 125 (quoting *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).

The district court's conclusion is directly contrary to this Court's holding in *Ways*, 274 F.3d at 518 ("An ordinance prohibiting a broad range of protected expression may be facially challenged as overbroad."). In *Ways*, the plaintiff, the director of operations of an adult entertainment business, filed suit challenging the constitutionality of an ordinance that prohibited "any employee or performer from having sexual contact with any other person for remuneration or in conjunction with a performance or entertainment in any business establishment." 274 F.3d at 516. In addressing the plaintiff's right to challenge the ordinance as overbroad, this Court stated:

> Under the overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face because it also threatens others not before the court—those who

30

desire to engage in legally protected expression but who may refrain from doing so. The rationale for allowing an individual to assert the constitutional rights of others not before the court is that broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected.

*Id*. (internal quotations omitted).[3]

Consistent with these principles, this Court observed—on its own reading of the law, not evidence—that the ordinance

could have been enforced to prohibit the type of simulated sex to be found in productions of *Hair*. The ordinance could also have been enforced to prohibit stage actors from kissing and ballet dancers or ice skaters from lifting each other by the buttocks, if such acts could 'reasonably be construed' to be for the 'sexual arousal or gratification' of any observer or performer.

274 F.3d at 518. As a result, this Court recognized that the plaintiff could mount a facial challenge to the ordinance—which the Court proceeded to hold was unconstitutionally overbroad. *Id*. at 518–20.

---

[3] *Ways* relied upon *Taxpayers for Vincent*. The district court cited *Taxpayers for Vincent*, but overlooked that in that case, unlike here, the plaintiffs had "failed to demonstrate a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court." 466 U.S. at 802. The Supreme Court emphasized that the plaintiffs "have not attempted to demonstrate that the ordinance applies to any conduct more likely to be protected by the First Amendment than their own crosswires signs." *Id*. In contrast, here the text of the Ordinance makes it readily apparent that it is likely to significantly compromise the First Amendment rights of other residents of Bel-Nor differently than the circumstances presented here.

The Court should reach the same conclusion here. Considering the Ordinance's extremely broad definition of the term "sign," there is a realistic danger that the Ordinance will significantly compromise the First Amendment protections of other Bel-Nor residents in many other ways. For example, it is likely that many Bel-Nor residents currently violate the Ordinance because they have a sign affixed to their house or fence (such as "No Solicitation," "No Trespassing," or "Beware of Dog") <u>and</u> another yard sign or other sign displayed from the interior of any window of their house. *See also* Tr. 12, 17–19 and 22–23 (other examples provided by Willson at preliminary injunction hearing).

Furthermore, Bel-Nor's enforcement of the definition of "sign" and the exemption created for certain types of "flags" poses a realistic danger that the Ordinance will significantly compromise the First Amendment rights of other Bel-Nor residents in other different ways. Specifically, the Ordinance's flag exemption results in different treatment of residents based on what type of flags they may choose to place outside their homes. Residents who wish to place an American flag —a common occurrence—could also place a yard sign (since their flag would not constitute a sign under the Ordinance), while residents who wish to place other types of flags that do not constitute "a symbol of a government or institution"— also a common occurrence—would be precluded from placing a yard sign (since their flag would constitute a sign under the Ordinance). App. 97. Indeed, Willson

himself is in some limbo; the Ordinance was enforced against him apparently

because of his three political signs, but he also displays a garden flag that does not

fit under the "flag" definition in the Ordinance. Tr. 7 (Exhibit F).

Thus, the district court erred in holding that Willson could not challenge the

Ordinance as facially invalid under the overbreadth doctrine.[4]

## III)   The district court erred in concluding that Willson could not challenge the Ordinance as an invalid content-based regulation, in that the Ordinance's exemption for certain types of flags makes the definition of "sign" content based.

The district court also sidestepped Willson's argument that the Ordinance is

content-based. App. 121–122. Rather than consider Willson's argument, the

district court surmised that there "is no evidence that any exemption for flags

---

[4] Finally, even assuming, *arguendo*, that Willson failed to establish that he can facially challenge the Ordinance, any such failure was caused by the district court's erroneous evidentiary rulings. Specifically, because the district court erroneously limited Willson's First Amendment claim to his three political yard signs, the court precluded Willson from introducing evidence establishing the overbroad nature of the Ordinance, and the different ways in which the Ordinance could impact other residents of the city. *See*, *e.g.*, Tr. 52. The district court abused its discretion by precluding Willson from introducing evidence in support of his overbreadth claim. *See*, *e.g.*, *Doe v. Young*, 664 F.3d 727, 733 (8th Cir. 2011) ("overturn[ing] the district court's decision to exclude critical evidence without adequate justification"); *United States v. Heathershaw*, 81 F.3d 765, 769 (8th Cir. 1996) (holding that district court erred in excluding evidence because it prevented the plaintiff "from presenting his theory . . . and was so harmful to his case"); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 833 (8th Cir. 1977) (holding that district court "erred in excluding relevant evidence that might well have affected its findings").

affected Plaintiff in any adverse way." App. 121. The import of this conclusion—that Wilson could not challenge the Ordinance as content based—is directly contrary to this Court's holding in *Neighborhood Enterprises*. In that case, this Court relied upon sections of the city code to find the sign-restriction scheme content based even though those sections had not been enforced against the plaintiffs.

In *Neighborhood Enterprises*, plaintiffs (collectively referred to as "Sanctuary") commissioned a sign/mural for the south side of a building owned by one of the plaintiffs ("SITO"). *Id.* at 731. The sign/mural consisted of the words "End Eminent Domain Abuse." *Id.* In response, the City issued a citation to SITO, declaring the sign/mural to be an "illegal sign" for which a permit was necessary. *Id.* As a result, Sanctuary filed an application for a sign permit, which was rejected. *Id.* Specifically, the City's zoning administrator denied the application for a sign permit "based upon §§ 26.68.010; 26.68.020(17), (20), (21), (22), and (24); and 26.68.080(A), (B), (D) and (E)(2)" of the zoning code. *Id.*

In denying the application, the zoning administrator did <u>not</u> mention nor rely on two other provisions in the zoning code: (1) Section 26.68.030 which is titled "Signs permitted in all districts," and sets forth "14 categories of signs exempted from the sign permit requirement;" and (2) Section 26.68.050 which is titled

"Political signs in F through K districts," and identifies certain political signs for which permits are not required. *Id*. at 740 and 742.

Subsequently, after the Board upheld the denial of the permit, Sanctuary filed suit alleging, among other things, that the zoning code's sign regulations were facially invalid under the United States Constitution. *Id*. at 733. The district court, however, held that Sanctuary had standing only to challenge the specific provisions that were applied against it and, therefore, could not challenge the constitutionality of Sections 26.68.030 and 26.68.050 of the zoning code:

> Petitioners may only challenge those provisions of the Code which were actually applied to them. *See*, *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 796-805 (8th Cir. 2006). *Advantage Media* affirms the general principle that in order to have standing to bring a First Amendment challenge, a plaintiff must be contesting provisions upon which the restriction was based.

*Neighborhood Enters., Inc. v. City of St. Louis*, 718 F. Supp. 2d 1025, 1036 n.7 (E.D. Mo. 2010).

On appeal, this Court began its analysis by specifically citing its prior decision in *Advantage Media*. 644 F.3d at 734. Nevertheless, this Court reversed the district court, holding that Sanctuary could challenge the constitutionality of Sections 26.68.030 and 26.68.050 of the zoning code:

> Moreover, Sanctuary has standing to challenge those portions of the Sign Code which provide the basic definitional structure for the terms used in the [violated sections] and more generally define the scope of signs allowed by [the violated sections]. Sanctuary's challenge may include[] provisions discussing the purpose and intent of the Sign

Code and definitional sections. **We may tak[e] into account other provisions, such as § 26.68.030 and § 26.68.050, that may affect the constitutionality of those provisions applied to Sanctuary. The City's designation of Sanctuary's purported mural as a 'sign' essentially acknowledges that the alleged sign fits no exemption under §§ 26.68.020(17)(a)-(e), 26.68.030, or 26.68.050.**

644 F.3d at 735 (alterations in original) (emphasis added) (internal quotations omitted).

In denying Willson a preliminary injunction, the district court in this case failed to apply *Neighborhood Enterprises*. Just as Sanctuary could challenge Sections 26.68.030 and 26.68.050 of the zoning code (even though those sections were not applied in denying Sanctuary's application and the exemptions provided in those sections did not apply to Sanctuary's sign/mural), Willson can challenge the definition of "sign" because the Ordinance's exemption for certain types of "flags" makes the definition of "sign" content-based.

The district court failed to grapple with the fact that the "definitional sections" in the Ordinance render the sign restrictions content based. In particular, Section 400.120(E)(5), which defines the term "flag," should have been considered because that provision "may affect the constitutionality of those provisions applied to [Willson]." *See Neighborhood Enters.,* 644 F.3d at 735. Specifically, the Ordinance's exemption for certain types of flags makes the definition of "sign"— which was applied against Willson—content based. Indeed, Bel-Nor's "designation" of Willson's political yard signs as a "'sign' essentially

36

acknowledges that the alleged sign[s] fit[] no content exemption" under the Ordinance. *Id*. This case is not distinguishable from *Neighborhood Enterprises*. One of the things that made the sign ordinance unconstitutional in that case is that it excluded "flags of nations, states and cities, fraternal, religious and civic organizations" from definition of "sign," as Bel-Nor has done here. *Id*. at 735, 736–7, 738.

Thus, the district court erred in concluding that Willson could not challenge the Ordinance as an invalid content-based regulation, since the Ordinance's exemption for certain types of flags makes the definition of "sign" content based.

## CONCLUSION

For all the foregoing reasons, this Court should reverse the district court's preliminary injunction ruling and remand with instructions for the district court to enter a preliminary injunction.

Respectfully submitted,

*/s/*Anthony E. Rothert
Anthony E. Rothert
Jessie Steffan
Omri E. Praiss
ACLU OF MISSOURI
  FOUNDATION
906 Olive Street
Suite 1130
St. Louis, MO 63101
(314) 652-3114

Gillian Wilcox
ACLU OF MISSOURI
  FOUNDATION
406 West 34th Street
Suite 420
Kansas City, MO 64111

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 8,132 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

This brief has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

/s/ Anthony E. Rothert

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on May 21, 2018, and thereby electronically served on all counsel of record.


*/s/* Anthony E. Rothert