18-1753

_____

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

Lawrence Willson,
Appellant,

v.

City of Bel-Nor, Missouri,
Appellee.

_____

Appeal from the United States District Court
Eastern District of Missouri
The Honorable Ronnie L. White, District Judge

_____

## REPLY BRIEF

_____

Anthony E. Rothert
Jessie Steffan
Omri E. Praiss
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114

Gillian R. Wilcox
ACLU of Missouri Foundation
406 West 34th Street
Suite 420
Kansas City, Missouri 64111
(816) 470-9933

**Attorneys for Appellant**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...............................................................................2

**ARGUMENT** ....................................................................................................4

**I.      The Ordinance is facially overbroad**. .......................................................4

*a.   A law can be both content based* and *overbroad, and the Bel-Nor Ordinance suffers from both constitutional infirmities.* .........................................................4

*b.   A facial overbreadth challenge does not require evidence of enforcement against third parties.*.......................................................................................7

*c.   Facial overbreadth precedents are applicable to municipal sign ordinances just as they are applicable to laws restricting other types of expression.*..............9

**II.     The Ordinance is content based and cannot withstand strict scrutiny.**.10

*a.   Neighborhood Enterprises is on point.* .........................................................10

*b.   No definition of "institution" can make the Ordinance content neutral.*.......11

**III.    Even assuming the Ordinance is content neutral, it is not narrowly tailored and does not leave open ample alternative means to communicate.** ..13

*a.   Contrary to Bel-Nor's argument, the district court affirmed by* Arlington County *had considered evidence supporting the county's asserted interests.*......13

*b.   Bel-Nor's Ordinance is even less carefully tailored than Arlington County's ordinance.* ...............................................................................................14

**CONCLUSION**.................................................................................................15

# TABLE OF AUTHORITIES

## *Cases*

*Arlington County Republican Committee v. Arlington County*,
   790 F. Supp. 618 (E.D. Va. 1992)................................................................... 13, 14

*Arlington County Republican Committee v. Arlington County*,
   983 F.2d 587 (4th Cir. 1993) ........................................................................ 13, 14

*City of Ladue v. Gilleo*,
   512 U.S. 43 (1994)................................................................................................ 14

*Civil Serv. Com'n of St. Louis v. Members of Bd. of Aldermen of St. Louis*,
   92 S.W.3d 785 (Mo. 2003) (en banc) ............................................................ 11, 12

*Dimmitt v. City of Clearwater*,
   985 F.2d 1565 (11th Cir. 1993) ................................................................. *passim*

*Neighborhood Enters., Inc. v. City of St. Louis*,
   644 F.3d 728 (8th Cir. 2011) ......................................................................... 10, 12

*Snider v. City of Cape Girardeau*,
   752 F.3d 1149 (8th Cir. 2014) ............................................................................. 10

*Solomon v. City of Gainesville*,
   763 F.2d 1212 (11th Cir. 1985) ............................................................................. 9

*Springfield v. San Diego Unified Port Dist.*,
   950 F. Supp. 1482 (S.D. Cal. 1996) ...................................................................... 9

*St. Louis Effort for AIDS v. Huff*,
   782 F.3d 1016 (8th Cir. 2015) ............................................................................. 11

*Wash. State Grange v. Wash. State Repub. Party*,
   552 U.S. 442 (2008)................................................................................................ 4

*United States v. Stevens*,
   559 U.S. 460 (2010)...................................................................................... 4, 8, 10

*Ways v. City of Lincoln*,
   274 F.3d 514 (8th Cir. 2001) .......................................................................... 4, 8

*XXL of Ohio, Inc. v. City of Broadview Heights*,
   341 F. Supp. 2d 765 (N.D. Ohio 2004) ................................................................ 9

<u>**ARGUMENT**</u>

Willson is likely to succeed on his First Amendment claim for three reasons: the Ordinance is facially overbroad, content based, and—even if found content neutral—not appropriately tailored.

**I.** <u>**The Ordinance is facially overbroad.**</u>

"An ordinance prohibiting a broad range of protected expression may be facially challenged as overbroad." *Ways v. City of Lincoln*, 274 F.3d 514, 518 (8th Cir. 2001). A facial-overbreadth challenge to that type of ordinance will succeed if "a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 n.6 (2008) (internal quotation marks omitted). The Bel-Nor Ordinance, which has been enforced against Willson, prohibits a broad range of protected expression. He has shown that a substantial number of its applications are unconstitutional—in fact, that a substantial amount of the speech criminalized by the Ordinance is "common," has "ordinary and lawful" content, and is protected by the First Amendment. *United States v. Stevens*, 559 U.S. 460, 473 (2010); *see also, e.g.*, App. 108, 117.

      a. *A law can be both content based* and *overbroad, and the Bel-Nor Ordinance suffers from both constitutional infirmities.*

Bel-Nor suggests Willson is trying to "have it both ways" by arguing that the Ordinance is simultaneously overbroad and content based. Bel-Nor Br. 22. *See id.*

4

("Mr. Willson's entire argument on overbreadth concerns is the fact that the ordinance is so broad that it covers all signs"). This assertion mischaracterizes Willson's position: Willson has never asserted that the Ordinance "covers all signs." Instead, his argument is that the Ordinance defines the term "sign" extremely broadly (to encompass any object, including flags, that could be used to express an idea or belief), then exempts certain flags based on their content. App. 95–97. Specifically, the Ordinance excludes from the definition of "sign" those flags that "include any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution." App. 97.

Bel-Nor's apparent position—that a law can be either overbroad or content based, but not both—is untenable. That argument is discredited by the Eleventh Circuit Court of Appeals' decision in *Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993), striking down a sign law it recognized was both overbroad and content based. In *Dimmitt*, the city of Clearwater had threatened to enforce a sign law against a car salesman who had installed some two dozen American flags at his dealership. That sign law, whose definition of "sign" was strikingly similar to Bel-Nor's,[1] required permits for all signs but then exempted up to two flags of "a

---

[1] Clearwater's ordinance defined *sign* as "[a]ny writing, picture, symbol, banner or other graphic communication or device which is primarily used to convey information, attract attention, or advertise and is prominently visible from an outdoor location." *Id.* at 1568.

governmental unit or body." *Id.* at 1568. Commenting that, "[b]y its own terms, the Clearwater ordinance applie[d] to virtually any form of graphic communication that it publicly displayed," the appellate court held that "by limiting the permit exemption to government flags, the City ha[d] unconstitutionally differentiated between speech based upon its content." *Id.* at 1570.

The "mere fact" that Clearwater had never actually enforced the content-discriminatory language did not "remove this language from [the court's] consideration." *Id.* at 1571. To the contrary, the court expressed concern that third parties who wanted to display nongovernmental flags could "well be deterred from such activity by the clear terms of the Clearwater ordinance regardless of the lack of prior enforcement efforts." *Id.*

The car salesman's own expression—the display of many American flags—was (although prohibited for a different reason) exempted from the permit requirement. Nonetheless, the Eleventh Circuit found he could successfully challenge the permit requirement as well as the exemption because the law was facially overbroad. *Id.* at 1572.

---

Bel-Nor's Ordinance defines *sign* as "[a]ny poster, object, devise, or display, situated outdoors, which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event, idea, belief or location by any means, including but not limited to words, letters, figures, designs, symbols, colors, logos, fixtures, cartoons or images." App. 115.

Ultimately, the court concluded that Clearwater's sign ordinance was doubly unconstitutional:

> To summarize, by exempting only government flags from the permit requirement, section 134.008(18) clearly restricts speech based upon its content. Through the overbreadth doctrine, Dimmitt may attack the constitutionality of the Clearwater ordinance upon this ground.

*Id.* It therefore affirmed an injunction prohibiting enforcement of either the permit requirement or the two-flag exemption. *Id.*

By crafting a sign ordinance that bans too much protected speech *and* includes a content-based exception, Bel-Nor—like Clearwater—managed to violate the First Amendment prohibitions against <u>both</u> overbroad and content-based speech restrictions. There is no reason a law cannot suffer from both constitutional infirmities, and that is what the Ordinance does.

### b. *<u>A facial overbreadth challenge does not require evidence of enforcement against third parties.</u>*

Bel-Nor nonetheless contends that the Court should decline to consider the Ordinance's overbreadth because Willson has not alleged it has a "different impact upon parties not before the Court." Br. at 21. This is false—there is record evidence that his neighbors are *in fact* violating the Ordinance and thereby risking prosecution for their speech, *see, e.g.*, Tr. 12, 17–19, and 22–23—but it is also beside the point.

Evidence that third parties have *in fact* been prosecuted for protected speech is not necessary to make an overbreadth showing. In *Ways v. City of Lincoln*, for example, this Court observed—on its own reading of the law, not evidence—that the plaintiff could mount a facial-overbreadth challenge because the ordinance could *potentially* be enforced against third parties for engaging in other protected conduct. 274 F.3d at 518 (affirming preliminary injunction where ordinance "could have been" enforced to prohibit expression even "more likely to be protected" than plaintiff's own); *see also Stevens*, 559 U.S. at 480 (recognizing that the government had not *in fact* prosecuted a person for the types of protected speech the Court worried about restricting and nonetheless rejecting record of reasonable exercise of prosecutorial discretion as insufficient to save facially overbroad law); *Dimmitt*, 985 F.2d at 1572 (same).

Like the *Ways* and *Stevens* plaintiffs, Willson first described the plain language of the Ordinance, thereby demonstrating that the Ordinance "create[s] a criminal prohibition of alarming breadth." *Stevens*, 559 U.S. at 474; App. 18, 29–30, 73–74 (argument on overbreadth), 38–40 (Ordinance language). He then catalogued multiple kinds of protected speech, beyond his own, that is criminalized by the Ordinance. App. 108 (hypothetical speech), 117 (neighbors' actual speech). That inquiry—first, nailing down the scope of the prohibition, and second, considering whether that prohibition encompasses a substantial number of

unconstitutional applications, which properly includes hypotheticals—is exactly what is required when mounting a facial-overbreadth challenge. *See also* Br. 19; App. 29–30, 108 (applying the third and final step in the facial-overbreadth analysis and explaining that the Ordinance's text is clear and not subject to a limiting construction).

     c. *Facial overbreadth precedents are applicable to municipal sign ordinances just as they are applicable to laws restricting other types of expression.*

Finally, Bel-Nor chides Willson for relying on overbreadth precedents from this Court and the Supreme Court that do not involve municipal sign ordinances. Bel-Nor provides no explanation why these cases would not apply to municipal sign ordinances. But in any event, courts have found sign ordinances invalid under the overbreadth doctrine. *See*, *e.g.*, *Solomon v. City of Gainesville*, 763 F.2d 1212, 1214-15 (11th Cir. 1985) (finding sign ordinance to be facially unconstitutional because "by its broad, undefined terms" the ordinance "necessarily sweeps within its ambit both protected and unprotected speech"); *Dimmitt*, 985 F.2d at 1572; *XXL of Ohio, Inc. v. City of Broadview Heights*, 341 F. Supp. 2d 765, 789 (N.D. Ohio 2004); *Springfield v. San Diego Unified Port Dist.*, 950 F. Supp. 1482, 1490 (S.D. Cal. 1996).

As Willson has shown, the Ordinance criminalizes a substantial amount of expressive activity. Therefore, he is likely to succeed on the merits of his First

Amendment claim. *See*, *e.g.*, *Stevens*, 559 U.S. at 473; *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1158 (8th Cir. 2014) (holding that statute was facially unconstitutional under the First Amendment because it "criminalizes a substantial amount of expressive activity").

## II.    The Ordinance is content based and cannot withstand strict scrutiny.

### a.    Neighborhood Enterprises *is on point.*

The Court should decline Bel-Nor's invitation to overlook the Ordinance's content discrimination on the basis that Willson was not accused of violating that "portion of the ordinance." Bel-Nor Br. 24. As Willson explained in his opening brief, *Neighborhood Enterprises* is directly on point. Bel-Nor's own take on the case buttresses Wilson's position: the city recognizes the ordinance in that case "was clearly content based" because of its content-based exemptions: "[n]ational, state, religious, professional and civic symbols were allowed but others were not." Bel-Nor Br. 37–38 (citing *Neighborhood Enters.*, 644 F.3d at 736–37). That Bel-Nor's exemptions are narrower than St. Louis's were does not render *Neighborhood Enterprises* inapposite. Both ordinances discriminate among categories of signs based on content, and Willson would have been permitted more protected speech if one (or all) of his signs fell within the exemption. The *Neighborhood Enterprises* analysis applies.

10

*b.* *No definition of "institution" can make the Ordinance content neutral.*

Bel-Nor also advocates for a broad interpretation of "institution" in the definition of which flags are exempted from being considered signs. Indeed, Bel-Nor suggests that every flag imaginable constitutes a flag of a government or institution. There are several problems this approach.

First, it is not challenging to imagine flags that outside the exemption no matter how broadly "institution" is read. For example, if Willson's own signs were made of fabric rather than corrugated plastic, his "Jason Kander U.S. Senate" flag would not be a symbol of an institution under any definition of that term. Neither would popular flags displaying flowers, celebrating holidays, or showing support for movements. *See* App. 117.

Second, Bel-Nor's expansive reading of "institution" is untenable as a matter of statutory construction. The Ordinance exempts from sign restrictions "any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution." App. 97. If the phrase "government or institution" was intended to encompass *all* flags, as Bel-Nor suggests, then the phrase is superfluous. Including the terms "government or institution" but interpreting to encompass anything imaginable "would defy the norm of statutory construction that every word, clause, sentence, and provision of a statute must have effect." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1025 (8th Cir. 2015) (quoting *Civil*

*Serv. Com'n of St. Louis v. Members of Bd. of Aldermen of St. Louis*, 92 S.W.3d 785, 788 (Mo. 2003) (en banc)). Courts will "presume[ ] that the legislature did not insert idle verbiage or superfluous language in a statute." *Id.* (alteration in original).

In any event, even if Bel-Nor enforcement authorities used the broadest possible definitions to determine whether a particular flag falls within the sign restrictions or is exempt because it represents "a symbol of a government or institution," they would still be basing that decision on the content of the flag, which is impermissible in the absence of a compelling justification. *See*, *e.g.*, *Neighborhood Enters.*, 644 F.3d at 736 ("Upon review, we conclude that the zoning code's definition of 'sign' is impermissibly content-based because 'the message conveyed determines whether the speech is subject to the restriction.'"). *See also Dimmitt*, 985 F.2d at 1568–70 (holding that sign ordinance that exempted flags representing "a governmental unit or body" "unconstitutionally differentiated between speech based upon its content").

Because the Ordinance is content based, it is subject to strict scrutiny and, as a result, Bel-Nor must have a "compelling" interest in enacting the law *and* the law must be the alternative least restrictive of speech. *Neighborhood Enters.*, 644 F.3d at 738. Bel-Nor does not even attempt to carry this heavy burden. *See id.* ("a

municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling").

Therefore, Willson is likely to succeed on the merits of his First Amendment claim because the Ordinance is content based and cannot withstand strict scrutiny.

III. **Even assuming the Ordinance is content neutral, it is not narrowly tailored and does not leave open ample alternative means to communicate.**

  a. *Contrary to Bel-Nor's argument, the district court affirmed by* Arlington County *had considered evidence supporting the county's asserted interests.*

Bel-Nor's attempt to distinguish *Arlington County Republican Committee v. Arlington County*, 983 F.2d 587 (4th Cir. 1993), is unavailing. The Fourth Circuit held that a two-sign limitation—double what Bel-Nor allows—did not survive intermediate scrutiny. *Arlington*, 983 F.2d at 594–95. Bel-Nor surmises that "[t]he problem in the prior cases cited by Mr. Willson is that the concerns for traffic safety and aesthetics were merely presented as de facto considerations: there were no facts presented to actually show what the considerations were or why the ordinance was enacted as it was." Bel-Nor Br. 31–32. The district court's opinion in *Arlington*, however, shows that the court considered the preamble to ordinance as well as the affidavit of the County's planning director, "who confirm[ed] that unregulated signs are inconsistent with the County's traffic-safety and aesthetics concerns." 790 F. Supp. 618, 623 (E.D. Va. 1992). It was based on this evidence

13

that the district court concluded that the County's traffic safety and aesthetics concerns were "substantial governmental goals." *Id*. Nevertheless, the court found that the County failed to establish that the two-sign limit was narrowly tailored to meet the County's traffic safety and aesthetics needs. *Id*. at 624–26.

     b. <u>*Bel-Nor's Ordinance is even less carefully tailored than Arlington County's ordinance.*</u>

Furthermore, even though the Arlington County ordinance permitted residents to post one of the signs in their windows, the district court nonetheless concluded that the two-sign limit failed to "leave open ample alternative means of communication." *Id*. at 621, 628. As a result, the district court held that the two-sign limit was unconstitutional. The Fourth Circuit affirmed. *Arlington*, 983 F.2d at 594. The ordinance at issue in *Arlington* was struck down even though it was not as restrictive as Bel-Nor's. Bel-Nor allows one sign, not two, and prohibits any signs affixed to any outside structure or tree as well as any sign that is displayed from the interior of any window. App. 96–97. *Arlington* is not distinguishable on the basis urged by Bel-Nor.

Therefore, even if the Ordinance is treated as content neutral, *see City of Ladue v. Gilleo*, 512 U.S. 43, 53 (1994), Willson is likely to succeed on the merits of his First Amendment claim because the Ordinance cannot withstand intermediate scrutiny.

## CONCLUSION

For these reasons, the district court's order denying Willson's motion for a preliminary injunction should be reversed.

Respectfully submitted,

/s/Anthony E. Rothert
Anthony E. Rothert
Jessie Steffan
Omri E. Praiss
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, Missouri  63101
(314) 652-3114

Gillian Wilcox
ACLU OF MISSOURI FOUNDATION
406 West 34th Street, Suite 420
Kansas City, Missouri  64111

*Counsel for Appellant*

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 2,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

This brief has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

/s/ Anthony E. Rothert

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on August 17, 2018, and thereby electronically served on all counsel of record.

/s/ Anthony E. Rothert